### 34799. EPPS v. WOOD et al.
### 34800. EPPS v. EPPS et al.

NICHOLS, Chief Justice.

This is a resulting trust case. The widower (in Case No. 34799) and the administrator of the deceased wife's estate (in Case No. 34800) appeal from an order granting summary judgment for the deceased wife's sister.

Depositions and affidavits introduced in support of and in opposition to the motion for summary judgment establish the following: Clifford and Frances Epps were husband and wife. Both were gainfully employed during a portion of their marriage. Since 1971, Clifford has been receiving Veteran's Administration and Social Security benefits in excess of $1,000 each month. Frances retired from her employment in 1971 and received a small monthly income thereafter. Before Clifford was injured during the early 1960's, he had maintained bank accounts in his own name. After the funds in those accounts were exhausted during the periods of his hospitalization and recovery, these accounts were closed out, and thereafter his income was deposited by Frances into a checking account maintained in the names of Frances and her sister, Mrs. Vivian Wood, until withdrawn by Frances

either to pay Clifford's and Frances' living expenses, or to make periodic deposits into certain savings accounts that also were maintained in the names of Frances and Vivian. Periodically, Frances took funds from the savings accounts and purchased bank certificates in her and Vivian's names. All of these accounts and certificates were with right of survivorship, and Clifford's name did not appear on any of them.

Clifford was aware of these transactions. After he was injured during the early 1960's, he executed and filed of record, and thereafter never canceled, a general power of attorney in favor of Frances. Everyone, including Clifford, agrees that Clifford is not a good businessman; in fact, that he could be a spendthrift, whereas Frances was a skilled and successful manager of financial matters. She placed approximately $500 per month from Clifford's benefit checks into the savings accounts and certificates. Clifford simply gave Frances his paychecks and his benefit checks and left financial matters entirely up to her. He did not question her actions or her decisions.

Clifford and Frances had several houses in Macon, Georgia that were titled either in Clifford's or in Frances' name during their marriage. Their first residence, purchased in 1951, was at 2784 Alta Vista Avenue. It was titled in Clifford's name. A second house was purchased in 1956 at 336 Clinton Street to serve as a place of residence for Frances' aged parents and her mentally retarded brother. All or a large part of Frances' income then was being spent to support her parents and brother. Clifford made the down payment on the Clinton Street property by drawing out his retirement benefits from the company where he then was employed. The Clinton Street property was titled in Frances' name because Clifford regarded it as being a gift to her. In 1962 the proceeds from the sale of the Alta Vista property were used to purchase a residence at 547 Woolfolk Street. The Woolfolk Street property was titled in Frances' name because, in the words of Clifford, "I gave her power of attorney when I had to go to the hospital so long and she was a good business woman and I saw no reason to change it." He also testified about the Woolfolk Street property that there was no agreement for her to hold the title in trust for him; rather, "I bought it as ours."

A few years later, in 1966, they sold the Clinton Street and Woolfolk Street properties, and the proceeds were used to purchase in Frances' name a vacant lot upon which they constructed a home at 598 Robert Henry Street, where they lived until Frances' death. When questioned as to why the Robert Henry Street property was put in Frances' name, Clifford testified that Frances "was still guardian or still power of attorney and I saw no reason to change it." He swore that there was no agreement between him and Frances about what she was to do with the Robert Henry Street property, which he regarded as being theirs.

Clifford has been under periodic psychiatric care for many years, both as an in-patient at Veteran's Administration Hospitals and as an out-patient. He always has turned himself in when he felt need for care and never has been involuntarily committed. He also has received medical treatment and undergone hospitalization for alcohol abuse and for alcohol and drug abuse.

In 1972, Frances recorded an instrument in the form of a deed, executed in consideration of love and affection, pursuant to which she purported to convey to herself and her sister Vivian the home in which she and Clifford then were living on Robert Henry Street. The instrument recites: "It is the intention of this instrument to convey unto the grantees herein a present fee simple title to said property as tenants in common and upon the death of either of said grantees herein the interest in said property shall immediately vest in the survivor." Clifford knew this deed existed, although it is not altogether clear exactly when or how he found out about it. Frances gave Clifford no reason for the deed and Clifford did not ask her about her reasons for it. He merely supposed that "the fact that I stayed in the hospital so much that she left it to where I would have a home and that her sister would be a trustee more or less to see that it didn't deteriorate and be done away with."

Upon the death of Frances, Vivian laid claim to all of the money and the house on Robert Henry Street to the total exclusion of Clifford. She did so, according to her evidence, in accordance with the survivorship deed and with Frances' expression of intent as set forth in a

purported will drawn in Frances' own handwriting but unwitnessed. This writing states that the house and all the money was to be the property of Vivian to be used by her to support their mentally retarded brother or for whatever other purpose Vivian might see fit. This writing further recites that Clifford had money from other sources "that will be enough for him to put into the Hell Hole's [sic] of this World."

Vivian testified that although there was an agreement between her and Frances for Frances to leave to her all of Clifford's assets, there was no agreement for her to take care of Clifford or to expend any money for his benefit. She later testified that the money and property being left to her was not Clifford's; rather, that it all belonged to Frances. She also swore that Frances, as well as Clifford, put money into the various bank accounts, certificates, and homes, some money of which came from Frances' earnings and some of which came from their mother's estate; that the various family members always had helped each other out financially, including her paying for Frances' funeral arrangements, and that she and her husband had helped keep Frances and Clifford from losing the Robert Henry Street property when Clifford had been in the hospital. Vivian claimed all of the money and the house as hers alone. She disavowed any obligation to provide anything for Clifford.

Clifford testified positively that he never intended to make a gift of the money or of the Robert Henry Street property to Frances; that all of it was theirs and not hers; that if he ever had known that she was claiming it as hers alone to his complete exclusion, he would have asserted his rights sooner. He thought she was acting for him or for them, not for herself alone.

As to Clifford's medical conditions and the reason why Clifford's assets were put into Frances' and Vivian's names, Vivian testified, in part, "Well, I don't know hardly how to begin to tell you, but over the years the way she made the things—the actions of Mr. Epps caused her to do what she did. That is all I—that's the best way I can explain it to you. His actions caused her to have my name on what she had. Q. Was that because she considered him mentally incompetent to handle any business? A. She

must have been so. The VA told her so. And he—the—as best I can tell you, just his actions caused my name to be on everything. Over the years that's what caused it. Q. When you say actions; are you talking about something he did or are you talking about his condition? A. Both. Q. Both? A. Both. Q. You said in your petition here that you believed Mr. Epps not to be capable of administering the estate. A. I don't think so. Q. You don't think so? A. No sir, I truly don't. Q. Is that your personal knowledge or . . . A. Yes sir. Q. . . . on the knowledge of your . . . A. That's my personal knowledge."

Vivian moved for summary judgment against Clifford and the administrator of Frances' estate. Clifford and the administrator responded in opposition. The trial court granted Vivian's motion. These appeals followed.

1. The motion to dismiss the appeal (Case No. 34799) is denied, as the appellant's brief is not deficient in the respects specified.

2. The trial court erred in granting summary judgment against Clifford Epps if, under the facts presented in support of and in opposition to the motion, a jury would have been authorized to find that there was an agreement, express or implied, between Clifford and Frances Epps for Frances Epps to hold all or part of the subject property in trust for Clifford Epps. It was not the proper function of the trial court in passing upon the motion, nor is it this court's function on appeal, to decide whether or not the evidence of such an agreement is "clear and convincing" as this determination is for the jury. The parties are entitled to introduce, and the jury is entitled to consider, as tending to prove the intention of the parties, evidence relating to the nature and circumstances of the transactions and the conduct and declarations of the parties. These principles are well rooted in our jurisprudence. Code Ann. §§ 108-101 through 108-108, and 108-116; *Freeman v. Saxton,* 240 Ga. 309, 310 (1) (240 SE2d 708) (1977); *Talmadge v. Talmadge,* 241 Ga. 609 (247 SE2d 61) (1978); *Ward v. Sebren,* 242 Ga. 782 (251 SE2d 524) (1979). Respected legal commentators agree with these views. Restatement (Second) of Trusts 403, § 443 (1959); IV Scott, Law of Trusts 3038, § 443 (2d Ed.); see Bogert, Trusts and Trustees, §§ 459, 460 (2d Ed. revd.

1977).

Clifford Epps denied the existence of any express agreement for Frances to hold the real and personal property in trust for him but insisted that he intended for Frances to be acting for him in accordance with the power of attorney that he executed and filed and that never was canceled during her lifetime. Whether or not it legally would have been possible for Frances to have acted for Clifford in all these respects pursuant to the power of attorney, or whether or not a court would hold that her actions were taken under the power of attorney, is entirely beside the point of inquiry. What is important is whether or not *they intended* for her to be acting in his behalf since proof of such an intention on their part by clear and convincing evidence would negate a donative intent on his part and would give rise to a resulting trust for him under Code Ann. § 108-116.

A majority of this court has expressed the view that the agreement of a husband and wife for the one to hold the property in trust for the other may arise by implication from the nature and circumstances of the transaction and from the parties' conduct and declarations concerning the nature of the transaction when the alleged donor's proof tends to establish a course of conduct between the parties evidencing such an intention. *Talmadge v. Talmadge,* supra. Although Justice Hall and I would permit the jury to find the intention of the alleged donor even in those cases in which there is no evidence of an express trust or evidence from which a trust could be implied, a majority of this court has not joined us in these views. *Ford v. Ford,* 243 Ga. 763 (1979). The present case does not approach any threshold issue since there is evidence here of a longstanding course of conduct between the parties, as well as other evidence requiring the motion to be denied.

Evidence introduced in support of and in opposition to the motion would authorize a jury to find either that Clifford Epps intended to establish a longstanding practice of giving to Frances Epps, his wife, his entire income and his entire interest in or claim to their marital residence or, instead, that both he and she intended that she was to act as his agent regarding family financial

matters and was to hold title to the marital residence for him. The testimony of Vivian Wood, first, that she and Frances had an agreement whereby Frances would leave *Clifford's* assets to Vivian, followed by Vivian's testimony that the assets belonged to *Frances* rather than to Clifford, also illustrates the nature and circumstances of the transaction between Frances and Clifford. Her testimony recognized Clifford's mental condition and that Clifford's assets were placed in her and Frances' names at least in part because of his mental condition.

In the procedural posture of this case at the time of this appeal, it is not for this court to say whether or not the quantum of proof of implied trust is sufficient to meet the "clear and convincing" standard. *Freeman v. Saxton*, supra.

The trial court erred in granting summary judgment in favor of Vivian Wood and against Clifford Epps.

3. In Case No. 34800, the administrator of Frances Epps appeals from summary judgment entered against him on Vivian Wood's motion. The deed in question was executed in 1972 before the survivorship deed provisions of Code Ann. § 85-1002 were effective. Ga. L. 1976, pp. 1388, 1401; Ga. L. 1976, pp. 1438, 1439. There is no merit in the administrator's contention that the deed and the deposit agreement could not be effective to create a right of survivorship or that the language used was insufficient for this purpose. *Wilson v. Brown,* 221 Ga. 273 (144 SE2d 332) (1965); *Taylor v. Citizens & Southern Bank,* 226 Ga. 15 (2) (172 SE2d 617) (1970); Pindar, Ga. Real Estate Law 1149, § 28-21. The trial court did not err in granting summary judgment against the administrator because beneficial interest in the real and personal property in issue will vest according to the jury's verdict either in Clifford Epps or in Vivian Wood. The jury will determine whether Vivian Wood holds legal title in trust for Clifford Epps or whether she holds both legal and equitable title free from any claim by Clifford Epps. In neither event will either legal or equitable title vest in the administrator.

*Judgment reversed in Case No. 34799; affirmed in Case No 34800. All the Justices concur, except Jordan, Hill and Bowles, JJ., who concur in the judgment only.*

SUBMITTED APRIL 13, 1979 — DECIDED JUNE 20, 1979.

O. L. *Crumbley,* for appellant (Case No. 34799).

V. J. *Adams, Jr., Durward B. Mercer,* for appellees (Case No 34799).

*Durward B. Mercer,* for appellant (Case No. 34800).

V. J. *Adams, Jr., O. L. Crumbley,* for appellees (Case No. 34800).

HILL, Justice, concurring in judgment.

It has been said before and will be said again: Hard cases make bad law. This is one of them.

In my view, this case is unique. The principal reason it is unique is the power of attorney given by the husband to the wife, the motives which led up to the creation of that power of attorney and the conduct of the parties while it remained in effect. Those facts established a fiduciary (agency) relationship as to transactions covered by the power of attorney and provide evidence of such relationship as to other transactions. On the one hand this special relationship negates or is evidence tending to negate the presumption of gift from husband to wife. Code Ann. § 108-116. On the other hand this relationship invoked numerous duties; e.g., Code Ann. § § 4-205, 4-208, 4-210, 37-708.

To me, this is not a resulting trust case. It may be a trust arising from fraud. Code Ann. § 108-106 (2). It may be a suit for damages for breach of fiduciary duty (see above), in which case the deceased's estate should be joined directly. In any event, suffice it to say that the defendant was not entitled to summary judgment as to the entire case. I therefore concur in the judgment.