35015. HASSLER v. CUNARD.

NICHOLS, Chief Justice.

The former wife, Joyce, appeals contending that the trial court should have directed a verdict for her as to the "bottomland" tract because she contends the evidence established a gift of a one-half undivided interest in the tract to her from the former husband, Elliott. She also

asserts that the jury's verdict as to the "bottomland" tract is inconsistent with the verdict as to the "home place" and, hence, that it cannot stand.

Three tracts originally were involved in these divorce-related proceedings. Parcel One, the parties' marital residence in DeKalb County, Georgia, and Parcel Three, the tract originally purchased by Elliott and his brother-in-law, John Dean Milton, are not involved in this appeal because the trial court directed a verdict for Joyce as to Parcel Three, and the jury awarded Parcel One to Joyce in accordance with her contentions. The parcel now sought by Joyce is Parcel Two, the "bottomland" lying in Jasper County, Georgia.

Joyce and Elliott were married in 1969 after the death of his first wife. He had acquired the "bottomland" from his uncle in 1950.

Joyce testified that he made a gift to her in 1972 by warranty deed of a one-half undivided interest in the "bottomland". Elliott testified that commencing about three months after their marriage, Joyce repeatedly had cried and had expressed to him her fears for her security in the event that he should predecease her; that she had taken his warranty deed to the "bottomland" to her place of business, a bank, and had prepared and presented to him for his signature a form of warranty deed from him to her conveying a one-half undivided interest in the tract covered by his deed; that he had signed the deed with the understanding that she would convey the tract back to him when he had time to consult with a lawyer and to have a will prepared naming her as his beneficiary. He testified that the deed description she had used purported to convey to her a part of the "bottomland" parcel he previously had conveyed to a third party; that he previously had prepared a will naming her as beneficiary but she was not satisfied with it. Joyce testified that there had been no such agreement for her to reconvey the property upon his having executed a will; that Elliott had made several wills and that she did not trust wills or feel secure by being named as beneficiary in his will because a will could be changed. She testified, "I did not plan to rely on a will." In reference to her actions in having deed forms prepared for his signature and her lack of trust in wills,

she further testified; "Q. Was he in good health at that time? A. I reckon so. Q. Were you concerned that he was going to die in the middle of the night? A. No. Q. That you wouldn't have anything if he should die? A. No, but I knew there was a lot [sic] involved, and he had married me, and I had married him, and we had married for life, and it just didn't work out." She testified further to her strained relationship with Elliott, based upon his cursing and threatening her, that she had separated from him and filed divorce proceedings against him prior to the present divorce proceedings but that they had reconciled and lived together until he again had cursed her and threatened her with bodily harm.

1. Joyce's reliance upon the cases of *Davis v. Davis,* 237 Ga. 448 (228 SE2d 838) (1976), and *Parks v. Parks,* 240 Ga. 1 (239 SE2d 334) (1977), is misplaced since Elliott's complaint alleges inceptive fraud and the transcript contains evidence in support of this allegation. Elliott testified directly and positively that he and Joyce had an understanding or agreement that she would reconvey the "bottomland" to him when he later prepared a will naming her as beneficiary; that he prepared a will naming her as beneficiary but that she did not like it and refused to reconvey the property. He contends that she continued to be married to him in order to get for herself interests in his real estate. Joyce testified in regard to the issue of whether or not there was an agreement: "Q. [Y]ou contend that the deed that you got to the property was a pure gift? A. Yes. Q. You say there was no agreement between you and Mr. Cunard? A. I was married to Mr. Cunard at the time we built a home in the country on part of the land after you sent me the plats that it had been divided up. I did not know of the plats at the time. Q. Do you contend there was no agreement between you and Mr. Cunard, that when he got a will that you would transfer his property back? A. No, he had several wills, Mrs. Kennedy." She further testified that she "did not plan to rely on a will."

The trial court correctly denied Joyce's motion for directed verdict as to the gift versus resulting trust issue because the evidence did not demand a verdict for Joyce. *Talmadge v. Talmadge,* 241 Ga. 609 (247 SE2d 61) (1978);

*Epps v. Wood,* 243 Ga. 835 (1979).

2. The jury's verdict as to the "bottomland" is not inconsistent with the verdict as to the "home place" as the jury could have found from the evidence that the marital relationship of the parties had deteriorated between 1970, when the "home place" deed was recorded just months after marriage, and 1972, when the "bottomland" deed was made and recorded. The jury could have concluded that contrary to her testimony, Joyce never intended to move to the "bottomland" with Elliott because she also testified that she feared bodily harm at his hands and was distressed with his cursing her. The jury could have concluded that her plan to rely upon deeds, rather than a will, was part of a plan formulated after 1970 to leave Elliott after she had an interest in his various parcels of realty. Joyce's testimony as to the reason for the deeds was that she was not afraid Elliott would die suddenly leaving her nothing; rather, she was concerned that the marriage had not worked out. This, too, is some evidence supporting Elliott's contention that she was planning to leave him as soon as she had acquired interests in his real estate. The verdicts are not factually inconsistent. Cf. *ESAB Distributors Southeast, Inc. v. Flamex Industries, Inc.,* 243 Ga. 355 (254 SE2d 328) (1979); *Bagwell v. Sportsman Camping Centers,* 130 Ga. App. 888 (204 SE2d 794) (1974).

*Judgment affirmed. All the Justices concur, except Undercofler, P. J., Hill and Bowles, J J., who concur in the judgment only.*

ARGUED JUNE 12, 1979 — DECIDED SEPTEMBER 10, 1979.

*Harvey, Willard, Elliott & Olsen, Wendell K. Willard,* for appellant.

*Carolyn Kennedy,* for appellee.