463 S.E.2d 892 (1995)
266 Ga. 104
C & S/SOVRAN CORPORATION et al.
v.
FIRST FEDERAL SAVINGS BANK OF BRUNSWICK.
No. S95A1048.
Supreme Court of Georgia.
December 4, 1995.
Reconsideration Denied December 19, 1995.
*893 Ben F. Johnson, III, Steven M. Collins, Alston & Bird, Atlanta, James A. Bishop, Law Offices of James A. Bishop, Brunswick, Vickie Cheek Dorsey, Atlanta, G. Conley Ingram, Alston & Bird, Atlanta, for C & S/Sovran Corporation et al.
Kirk M. McAlpin, Jr., Carlton M. Henson, McAlpin & Henson, Atlanta, Terry L. Readdick, Whelchel, Brown, Readdick & Bumgartner, Brunswick, for First Federal Savings Bank of Brunswick.
HINES, Justice.
This litigation stems from a failed bank merger. In April 1988, Citizens and Southern Corporation, Citizens and Southern Georgia Corporation, and Citizens and Southern National Bank (C & S) entered into an Agreement and Plan of Reorganization (Agreement) with First Federal Savings Bank of Brunswick (First Federal). The Agreement provided that First Federal would merge with C & S, and that First Federal shareholders would receive a certain number of C & S shares to be determined by a formula in the Agreement.
On September 1, 1990, C & S merged with Sovran Bank Corporation. Later that year, First Federal and C & S/Sovran Corporation (C & S/Sovran) amended the 1988 Agreement for a third time, and extended the deadline to consummate the merger to September 30, 1991. However, the merger was never consummated, and on September 27, 1991, First Federal filed a lawsuit seeking both specific performance of the Agreement and damages for breach of contract. First Federal alleged that the merger would have occurred but for C & S/Sovran's failure to comply with its obligations under the Agreement. On October 15, 1991, the Board of Directors of C & S/Sovran voted to terminate the Agreement. Shortly thereafter, on December 31, 1991, C & S/Sovran merged with North Carolina National Bank.
After a three-week trial, the jury found that C & S/Sovran had breached the Agreement between March and September 30, 1991. The jury specifically determined that "C & S/Sovran failed to diligently prepare *894 and file, and pursue the Y-2 application with the FRB [Federal Reserve Board]," as required by Sections 7.7 and 7.8 of the Agreement.
After the trial court denied C & S/Sovran's motion for entry of judgment on the verdict and motion for judgment notwithstanding the verdict, C & S/Sovran moved for summary judgment as to the issues of damages and specific performance. The trial court granted C & S/Sovran's motion in part, determining that First Federal was not entitled to recover damages, but denied the motion as to First Federal's request for specific performance. The court ordered C & S/Sovran to prepare and file all applications with Federal and State regulatory authorities necessary to accomplish the merger, and prepare all documents necessary for First Federal shareholders to make an election respecting the merger. The court also ruled that a second trial was necessary to determine the date the merger would have been accomplished but for the breach by C & S/Sovran in order to establish the number of C & S/Sovran shares which would have been offered to First Federal shareholders. C & S/Sovran appeals from the trial court's orders denying its motion for entry of judgment on the verdict, denying its motion for judgment notwithstanding the verdict, and denying its motion for summary judgment as to First Federal's request for specific performance.
1. C & S/Sovran contends that its termination of the Agreement required the entry of judgment in its favor. We disagree.
The relevant provisions of the Agreement state in part:
Notwithstanding any other provision of this Agreement or the Plan of Merger and notwithstanding the approval of this Agreement and the Plan of Merger by the stockholders of Brunswick, this Agreement may be terminated and the merger abandoned at any time prior to the Effective Date:
By a vote of a majority of the Board of Directors of either C & S or Brunswick in the event that the merger shall not have been consummated by September 30, 1991....
In the event of the termination and abandonment of this Agreement and the Plan of Merger pursuant to Section 10.1 of this Agreement, this Agreement and the Plan of Merger shall become void and have no effect, except that the provisions of Sections 5.5, 7.3 and 11.1 of this Agreement shall survive any such termination and abandonment.
C & S/Sovran maintains that because it was entitled to exercise its right of termination, and upon termination the Agreement became void and of no effect, no contract remained for the trial court to enforce. Essentially, C & S/Sovran argues that it cannot be held liable for breach of contract because it terminated the entire Agreement in accord with contract terms. It seeks to utilize the termination provision to exculpate itself from all liability resulting from its breach of contract.
"[T]ermination provisions such as that contained in the parties' contract are generally considered valid and enforceable." Department of Transportation v. Arapaho Construction, Inc., 257 Ga. 269, 357 S.E.2d 593 (1987). However, termination provisions which "act as exculpatory clauses, ... ` "must be clear and unambiguous, they must be specific in what they purport to cover, and any ambiguity will be construed against the drafter of the instrument."` [Cits.]" Id. at 270, 357 S.E.2d 593.
C & S/Sovran argues that it was permitted to terminate the Agreement regardless of the fact it may have been in breach of contract because another provision of the Agreement specifically contemplates that a terminating party may be in breach. However, the cited provision does not relieve a breaching party of all liability; rather, it merely provides that a terminating party who is not in breach is entitled to expenses. Moreover, the termination provision itself, which was drafted by C & S/Sovran, in no way purports to apply to situations where a party has breached the contract. Accordingly, *895 because C & S/Sovran, "as drafter of the contract, failed to incorporate any language in the termination provision explicitly referencing its application to breach of contract cases," C & S/Sovran is not entitled to utilize the termination provision, as an exculpatory clause, to escape all liability and deny First Federal the remedy of specific enforcement as contemplated by the Agreement. Department of Transportation v. Arapaho Construction, Inc., 180 Ga.App. 341, 343, 349 S.E.2d 196 (1986).
Furthermore, nothing in the Agreement permits a party to terminate by delaying execution of the merger for the purpose of avoiding the contract. The construction offered by C & S/Sovran would allow either party to sabotage the Agreement in order to delay consummation of the merger, then terminate the Agreement after September 30, 1991, and incur no liability. This Court has long held that "a contract [will not] be so construed as to authorize one of the parties to take advantage of his own wrong, unless it be plain and manifest that such was the intention of the parties." Finlay v. Ludden & Bates Southern Music House, 105 Ga. 264, 267-268, 31 S.E. 180 (1898). Thus, the trial court did not err in denying C & S/Sovran's motions for summary judgment as to specific performance and judgment notwithstanding the verdict based on the termination provision.
2. C & S/Sovran contends that the trial court erred by denying its motion for summary judgment as to First Federal's request for specific performance and requiring it to begin performing pursuant to the Agreement. It argues that no binding agreement to merge existed because First Federal's shareholders never approved the merger. But, C & S/Sovran's breach of the Agreement effectively prevented First Federal from obtaining shareholder approval; therefore, First Federal's nonperformance was excused as a matter of law. See OCGA § 13-4-23.
C & S/Sovran also urges that First Federal lacks standing to recover specific performance because such relief would benefit shareholders rather than the corporate entity. However, in the Agreement the parties acknowledge the difficulty of determining damages and contemplate that the Agreement be specifically enforced. As a party to both the Agreement and the action, First Federal has standing to seek the relief contemplated in the Agreement.
Additionally, C & S/Sovran asserts that the trial court improperly awarded specific performance to First Federal shareholders, even though the shareholders were not parties to the Agreement, were not intended third party beneficiaries, never voted to approve the merger, and are not parties to the lawsuit. However, the trial court awarded First Federal's shareholders nothing; rather, after the jury determined that C & S/Sovran had breached the Agreement, the court merely ordered C & S/Sovran to perform it. Although the Agreement states that there are no intended third party beneficiaries, the parties clearly contemplated that an offer of C & S/Sovran shares would be made to First Federal's shareholders. Thus, any incidental benefit accruing to First Federal shareholders is part and parcel of the Agreement which C & S/Sovran entered into freely and voluntarily. Accordingly, the trial court did not err by requiring C & S/Sovran to comply with its obligations under the Agreement.
3. C & S/Sovran contends that the nonperformance of conditions precedent to merger, including the failure of First Federal shareholders to approve the merger, without excuse, requires the entry of judgment in its favor. Specifically, C & S/Sovran notes that although the Agreement contains several conditions precedent to merger which were not performed, the jury determined that it breached the Agreement only by failing to diligently pursue and file the Y-2 application with the Federal Reserve Board. It maintains that the jury's refusal to find it in breach of any obligation respecting the other unsatisfied conditions precedent establishes that the nonperformance of those conditions *896 was not excused and that it had no obligation to perform the Agreement. We disagree.
In its charge to the jury, the trial court stated:
For purposes of this lawsuit, the term breach of contract is defined as the nonperformance without legal excuse by a party to the merger agreement of an act the agreement obligated them to perform which resulted in the failure of the merger.
Under this instruction, the jury's finding that C & S/Sovran had breached the Agreement establishes that C & S/Sovran's action or inaction resulted in the failure of the merger. C & S/Sovran's attempt to transform the verdict into something to the contrary is without merit. "A judgment must conform to the verdict [OCGA § 9-12-9]; and likewise it must follow the true meaning and intent of the finding of the jury." Taylor v. Taylor, 212 Ga. 637, 638, 94 S.E.2d 744 (1956). Accordingly, the trial court did not err by denying C & S/Sovran's motion for entry of judgment on the verdict.
4. Finally, C & S/Sovran contends that judgment should have been entered in its favor because the evidence at trial was insufficient to establish that it breached the Agreement. However, the record contains expert testimony that the merger would have been consummated by June of 1991 had C & S/Sovran filed the Y-2 application, and that C & S/Sovran did not use its best efforts regarding the merger transaction. If there is any evidence to support the jury verdict, the denial of a motion for judgment notwithstanding the verdict must be affirmed. Southern General Ins. Co. v. Holt, 262 Ga. 267, 416 S.E.2d 274 (1992).
Judgment affirmed.
BENHAM, C.J., FLETCHER and BIRDSONG, P.JJ., and HUNSTEIN, CARLEY and THOMPSON, JJ., concur.
SEARS, J., disqualified.