A01A1776. BAU v. ACTAMED CORPORATION.
(562 SE2d 734)

MILLER, Judge.

Acting pro se, Norman Bau, a former employee of Actamed Corporation, sued the company for breach of contract.[1] After both parties moved for summary judgment, the trial court granted summary judgment to Actamed and denied Bau's motion. Bau appeals this ruling, and upon review, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and when the undisputed facts, viewed most favorably to the nonmoving party, warrant judgment as a matter of law. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991); see OCGA § 9-11-56 (c). When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence. *Collier v. State Farm &c. Ins. Co.*, 249 Ga. App. 865, 866 (1) (549 SE2d 810) (2001).

The evidence shows that on January 31, 1997, Bau entered into a stock option agreement with his then employer, Actamed. The stock option plan granted Bau an option to purchase 4,000 shares of the common stock of the company. Each year following the grant date (January 31, 1997), one-fifth of the 4,000 shares would vest, and Bau then had the option to purchase those shares. On January 31, 1998, 800 shares vested, and Bau exercised the option to purchase those shares.

---

[1] The complaint was amended several times and at one point contained four counts, but Bau appeals only from the denial of summary judgment on Count 2.

The stock option plan also contained a provision entitled "Change in Control," which provided that

> [n]otwithstanding any provision in this Agreement to the contrary, in the event of a "change in control" of the Company while the optionee is in "continuous employment with the Company" (as defined in paragraph 3 (b)), this Option shall become immediately exercisable in full. For the purposes of this paragraph . . . , a "change in control" of the Company shall be deemed to occur if (i) *the Company is a party to a merger, share exchange or other business combination pursuant to which the Company does not survive or survives as a subsidiary of another corporation*; or (ii) all or substantially all of the assets of the Company are sold or otherwise disposed of.

(Emphasis supplied.) Paragraph 3 (b), which governed the optionee's right to exercise the option, provided that the option shall be exercisable "for a period ending 30 days after Optionee is no longer in 'continuous employment with the Company,' as provided in paragraph 6 (a) hereof." Paragraph 6 (a) provided that

> [u]pon termination (for any reason other than death or retirement) of Optionee's "continuous employment with the Company" (as defined in paragraph 3 (b) above) and with all of its subsidiaries (whether voluntary or involuntary and whether with or without cause), his or her option privileges thereafter shall be limited to the Option Shares which were immediately purchasable by him or her at the date of such termination and such option privileges shall expire unless exercised by him or her within 30 days after the date of such termination. . . .

On February 24, 1998, Actamed entered into an "Agreement and Plan of Reorganization" to merge with Healtheon Corporation. The merger was subject to shareholder approval of both companies and was expected to close no later than May 15, 1998.

On May 1, 1998, Actamed terminated Bau's employment with the company, and on May 23, 1998, Bau sought to purchase the 3,200 shares that remained from the stock agreement. Actamed refused to grant Bau the option to purchase the remaining shares because those options had not vested and had expired upon Bau's termination on May 1, 1998.

1. In eight enumerations, Bau argues that there was a "change in control" of Actamed on February 24, when the plan of reorganization was signed, and that therefore Actamed had become a "party to

a merger" under the "Change in Control" provision of his stock option plan. Under this reasoning, Bau claims that he was an employee of Actamed during the "change in control" and therefore was entitled to exercise the right to purchase the remaining 3,200 shares as allowed by paragraph 1 (c) of the stock option agreement.

Actamed argues that it became a "party to a merger" when the merger was consummated on May 19, 1998, and that as Bau was no longer an employee, the "Change in Control" provision did not apply.

"Where contract language is unambiguous, no construction is necessary and the court must simply enforce the contract according to its clear terms." (Footnote omitted.) *Caswell v. Anderson*, 241 Ga. App. 703 (527 SE2d 582) (2000). The stock option agreement between Actamed and Bau clearly states that a "change in control" occurs if Actamed is a party to a merger, not when Actamed is a party *to an agreement* to merge.[2] Moreover, the "Agreement and Plan of Reorganization" states that the companies shall not be merged until the effective time, with the effective time being the closing date of the merger (May 19, 1998). See also OCGA § 14-2-1106 (a merger takes effect when six events occur). Therefore, Actamed became a party to a merger on May 19, 1998, 18 days after Bau was terminated. Since Bau was no longer with the company, his right triggered by the merger had evaporated.

To be a party to a merger, there must be a merger, not simply a plan to merge. Under the plan of reorganization, the merger itself may have never taken place, as it could have been terminated by the parties. See, e.g., *C & S/Sovran Corp. v. First Fed. Sav. Bank &c.*, 266 Ga. 104, 105 (1) (463 SE2d 892) (1995). Indeed, to allow Bau to exercise his stock options prior to the closing date, when the consummation of the merger is uncertain, would be an absurd result.

Here, the language of both the stock option plan and the plan of reorganization is plain, and "[w]hen the language of an agreement is plain and unambiguous, the court must afford its literal meaning, despite a party's contention that he understood the contract to mean something else." (Citation omitted.) *Sofran Peachtree City v. Peachtree City Holdings*, 250 Ga. App. 46, 50 (550 SE2d 429) (2001). Therefore, we see no basis for extending the phrase "if the Company is a party to a merger" to begin the date when the plan of reorganization between companies was signed in February as Bau argues. Cf. *George L. Smith II &c. Auth. v. Soft Comdex*, 250 Ga. App. 461, 464 (1) (c) (550 SE2d 704) (2001). The court did not err in denying summary

---

[2] Actamed presented evidence that on May 1, 1998, when Bau was terminated, many conditions of the merger had not been satisfied, and that no change in control of Actamed had occurred.

judgment on this count of Bau's complaint and in granting summary judgment to Actamed.

2. In four enumerations, Bau presents arguments relating to his termination from Actamed. The stock option agreement, however, clearly states that the termination clause applies whether Bau was involuntarily or voluntarily terminated. Moreover, Bau was an at-will employee of Actamed. Therefore, Actamed had a right to terminate his employment at any time without cause. See *Hickman Datsun, Inc. v. Foster*, 181 Ga. App. 229, 230 (1) (351 SE2d 678) (1986). Bau's arguments that he intended to remain employed and that the "Change in Control" clause was to induce him into remaining in continuous employment with Actamed are of no significance.

3. Bau's enumeration claiming that the court erred in failing to grant his motion for reconsideration is without merit. As we held in Division 1, the court properly ruled on the motions for summary judgment. See *Kruse v. Todd*, 260 Ga. 63, 69 (4) (389 SE2d 488) (1990); *First Community Bank &c. v. Bryan Starr & Assoc.*, 203 Ga. App. 696, 697 (2) (417 SE2d 330) (1992).

*Judgment affirmed. Andrews, P. J., and Eldridge, J., concur.*

DECIDED MARCH 6, 2002 —
RECONSIDERATION DENIED MARCH 29, 2002 — ▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Norman J. Bau, *pro se.*
*Alston & Bird, Kenneth D. Steele, Leigh M. Levine*, for appellee.