## 62300. SINEATH v. LANE COMPANY.

POPE, Judge.

Appellant brought this action against appellee seeking to collect $1,500 under the terms of an oral contract. Appellant alleged that she was entitled to this amount from appellee for services rendered which resulted in the sale of an apartment complex in the Atlanta area. After hearing the case without the intervention of a jury, the trial court entered a judgment in favor of appellee. Appellant's sole enumeration of error on appeal challenges the sufficiency of the evidence to support the verdict.

The evidence showed that appellant was employed by appellee, a management company, as a resident manager for an apartment complex which was being managed by appellee. Appellant's duties as resident manager included supervising on-site staff, showing prospective residents around the complex, handling resident relations, keeping up-to-date records, collecting rental payments, etc. During the course of her employment, appellant was orally offered a $1,500 bonus by the president of appellee, which was to be paid to her when the apartment complex where she worked had been sold. Her duties in this regard involved showing the apartment complex and dispensing information to prospective buyers. Appellant was dismissed from her employment on April 28, 1980; the apartment complex was sold on July 1, 1980. Appellee refused appellant's demand for payment of the bonus.

Appellant contends that her responsibilities relating to the sale of the property were in addition to her duties as resident manager and that those additional responsibilities took extra time and work on her part. She further contends that she showed the property to the

eventual buyer and that her continued employment with appellee until the property had been sold was not a condition precedent to her collecting the bonus. In response to these contentions the president of appellee testified as follows:

"Q. . . .[Y]ou heard [appellant] testify . . . that as resident manager, she would at times be required to show prospective purchasers the property. Is that or is that not one of her duties as resident manager when hired?

"A. Yes, it would be.

"Q. In your opinion, were there any additional duties required of her as resident manager in order that an apartment complex was to sell?

"A. No. The duties would be exactly the same. The people may be different.

"Q. Well, in your own words, what are the reasons for offering a bonus or additional money to resident managers or other employees when the owner of the apartments is trying to sell an apartment complex that your company is managing? What's the basis for it?

"A. Well, the basis is that it is a discretionary bonus; and if I could use an analogy to clarify the point, oftentimes we set up discretionary bonuses in the hope that it will insure adherence to standards.

"For example, a property that has low occupancy oftentimes will put a bonus on for the people there, to rent it up and achieve a certain occupancy. And the duties and all remain exactly the same; but the dollars are there . . . as an incentive bonus hopefully to insure better than average performance.

"In the case of a property that is for sale . . . the on-site staff becomes very concerned about job security and there is a tendency for them to be concerned about whether they will lose their job, what will happen to them; and in order to minimize this fear and in order to give them an incentive to manage the property in the highest possible manner, we typically design a discretionary bonus.

"Oftentimes, purchase contracts have certain goals built in them. For example, the property will close four months from now provided occupancy is maintained at ninety percent or above. And, of course, if one of these conditions fails before closing, then the deal completely falls through. So, it's very vital to us that a manager on a property, once a contract is signed, really put out a hundred and fifty percent effort to insure that the performance is excellent, so that a potential sale doesn't fall through.

"Oftentimes, a sale will fall through a number of times because variables on the property change. Occupancy drops, or there are other problems. So, that's the reason.

"Q. And my understanding is that neither the resident manager nor a maintenance man nor any other party would have to do any additional work simply because the complex was selling that you were managing?

"A. Well, they would have no additional work. They would have the same work, but it would be for different people. Instead of showing a vacant apartment to a person that walks in to rent, you would show it to a person who is looking at the complex to buy; the same type of items.

"In terms of getting involved in the contract or anything like that, there are . . . no duties at all because . . . in cases like this, we are not acting as real estate agents, only as managers.

"Q. Okay. Are there any contingencies or conditions placed on receiving one of these bonuses if an apartment complex sells, that is, does this employee have to do anything else other than what you have described?

"A. Well, again, by definition and by company policy . . . we always, before we pay a bonus, . . . insist that the person that gets the bonus continue with the company and stay through the whole closing date. And the reason for that is because most deals fall through after a contract is signed, but before it closes, because of some type of problem. . . .

"Q. Do you recall a conversation with [appellant] concerning any promise to pay a bonus upon a closing?

"A. Yes. I called [appellant] . . . [A]t that time, I did discuss paying her a bonus, as I do on almost every property that we have for sale; and this bonus is typically paid by the owners of the property and they authorize us to offer it to the on-site people. And —

"Q. Okay. I didn't want to cut you off. Would this bonus be contingent or conditional upon satisfactory employment and continued satisfactory employment by the employee?

"A. Most definitely. . . . [B]y definition, if a property is under contract and if somebody buys a property, because they expect a certain level of performance, and if this level of performance is diminished or changed . . . prior to the time that this property closes, people normally have the right to get out of the contract, so it's very important that, especially from the time that a contract is signed until it closes, that everything those people think they are going to get, they really get."

A bonus of $1,000 was paid to appellant's replacement as resident manager upon the sale of the apartment complex.

"An appellate court will not disturb the fact findings of a judge sitting without a jury if there is any evidence to support them, unless they are clearly erroneous." *Yalanzon v. Sharon Const. Co.,* 141 Ga.

App. 294 (2) (233 SE2d 220) (1977). The trial judge in the case at bar found that appellant was not required to provide any additional services to those required of her as resident manager, that the purpose of the bonus was an incentive to encourage superior performance.

" ' . . . (C)ourts can not enforce promises binding on the conscience, except in those cases where some pecuniary damage flows from the breach, or where, in addition to the moral obligation, the promise is also supported by a legal consideration.' [Cit.] 'By definition, a bonus is something "extra" for which no services are rendered, (see Webster's New International Dictionary), or, it is something in addition to ordinary compensation under an express contract which is usually added as an incentive.' [Cit.] ' "Where one undertakes to perform for another service or labor for a given sum, any amount paid in excess of that sum, not based upon a new consideration, is a mere gratuity." [Cit.] "Such a promise, made at the beginning of the employment, is enforceable, though *it would not be if made pending the term* or after the performance was completed." [Cit.]' " *Management Search, Inc. v. Morgan,* 136 Ga. App. 651, 653 (222 SE2d 154) (1975). "Thus, even assuming, arguendo, 'that the findings of fact contended for by the (appellant) would have been authorized by the evidence presented on the trial, yet, where the facts found by the trial court were authorized by the evidence, such findings will not be set aside.' " *Azar v. Accurate Const. Co.,* 146 Ga. App. 326, 327 (246 SE2d 381) (1978).

*Judgment affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED NOVEMBER 17, 1981.

*Andrea J. Brownstein,* for appellant.
*Michael J. Cohen,* for appellee.