## A02A1902. GATEWAY BANK & TRUST v. TIMMS.
### (577 SE2d 15)

MIKELL, Judge.

Linda T. Timms filed a trover action against Gateway Bank & Trust ("Bank"), claiming that the Bank wrongfully repossessed a Nolan flatbed trailer that she owned. According to Timms, the Bank seized the trailer under the mistaken belief that it belonged to her son, Philip Hatfield, who had financed a different trailer with the Bank. The Bank refused to return the Nolan to Timms. A jury awarded her possession of the trailer, $5,000 in damages, attorney fees in the amount of "$5,007.40 + 2 days @ $150.00/hr,"[1] and $30,000 in punitive damages. Judgment was entered for a total of $42,407.40, including $7,407.40 in attorney fees. The Bank appeals, challenging the sufficiency of the evidence. We affirm.

The "any evidence" standard of appellate review applies to a judgment entered on a jury's verdict.[2]

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the [judgment entered thereon] will not be disturbed.[3]

1. "In order to maintain a trover action for the conversion of property, the plaintiff must be the true owner of the property with title thereto."[4] In its first enumerated error, the Bank asserts that Timms failed to present any evidence that she was the true owner of

---

[1] Timms's counsel stated in his place that Timms had incurred $5,007.40 in fees and litigation expenses, not including the last two days of trial. The Bank did not challenge the form of the verdict as to attorney fees.

[2] *Dumas & Assoc. v. Nalecz*, 249 Ga. App. 662 (549 SE2d 730) (2001).

[3] (Citation omitted.) Id.

[4] (Citations omitted.) *Clover Cable of Ohio v. Heywood*, 260 Ga. 341, 345 (6) (392 SE2d 855) (1990); see generally *Kornegay v. Thompson*, 157 Ga. App. 558 (278 SE2d 140) (1981).

the trailer. In this regard, evidence adduced at trial shows that the trailer was seized from the lot of Herschel Woods, an automobile dealer. Woods testified that Hatfield had asked him to sell the trailer at auction. Woods testified that he informed Hatfield that he would not auction the trailer because it lacked a serial number, and that Hatfield subsequently attached a serial plate to the trailer. In addition, Jeff Winston, who built the trailer, testified that Hatfield originally ordered it and made a down payment of $2,000. The Bank argues that because the trailer lacked any serial number or other identifying marks when it was manufactured, Timms could not prove that she owned it, and that Winston's testimony establishes that Hatfield owned the trailer.

The Bank's argument fails because Timms introduced evidence of ownership. Winston admitted that Timms paid the remaining balance of $7,500, and the manufacturer's statement of origin was issued to Timms Transport, Inc. Timms testified that she was the sole shareholder of Timms Transport, Inc. The first certificate of title for the trailer shows Timms Transport, Inc. as the owner, and title was subsequently transferred to Timms. The application for the license tag was issued to Timms Transport, Inc. and signed by Timms. Prior to trial, the Bank stipulated that no issue existed as to nonjoinder of a party, and the Bank concedes in its brief that title was registered to Timms. In addition, Timms testified that she and Hatfield had a meeting with Winston at Hatfield's house before the trailer was built in order to present her specifications. Finally, Timms testified that she never authorized Hatfield to sell her trailer at auction. "This evidence presented a conflict for the jury to resolve, and it is not within our province to second-guess their factual findings."[5] The evidence, although conflicting, supports the jury's finding that Timms was the true owner of the trailer, with title thereto.

2. In a trover action, the plaintiff may elect to demand a verdict for the return of the property "and its hire, if any."[6] The term "hire" has been interpreted to mean the "reasonable rental value of the property."[7] The hire runs from the date the property was converted.[8] In the instant case, Timms demanded the return of the trailer and its hire. At trial, Jonathan Timms ("Jonathan"), who is Timms's husband and operates the business with her, testified that since the trailer was seized, he and Timms were required to buy a bigger truck

---

[5] (Citation and punctuation omitted.) *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 747 (1) (542 SE2d 151) (2000).

[6] OCGA § 44-12-151 (3).

[7] *Adams Refrigerated Express v. Ingol*, 176 Ga. App. 457, 459 (1) (336 SE2d 289) (1985).

[8] *Thomas Mote Trucking v. PCL Civil Constructors*, 246 Ga. App. 306, 312 (4) (540 SE2d 261) (2000).

and lease a trailer owned by Triple R Transportation in Calhoun. Jonathan further testified that in his opinion, based on his experience in the trucking business, the fair rental value of the trailer was $100 per week. The trailer was seized on August 17, 1999, and trial commenced on March 20, 2001. The award of $5,000 in loss of hire damages was thus well supported by the evidence, contrary to the Bank's contention in its second enumerated error.

3. The Bank next attacks the award of punitive damages. Trover is an intentional tort for which punitive damages may be awarded, provided one or more of the criteria in OCGA § 51-12-5.1 (b) are met.[9] According to the statute,

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Greg Payne, a former loan officer with Northwest Georgia Bank, which held a security interest in Timms's trailer, testified that standard banking practice requires that an attempt be made to identify the secured vehicle correctly before repossessing it. Boyd Steele, the Bank's executive vice-president, testified that no effort was made to identify Hatfield as the owner of the trailer, either before or within a year after its seizure. Steele admitted that it was not until after he was deposed on August 2, 2000, that he discovered a favorable witness in the form of Winston. Moreover, when asked why this particular trailer was seized, Steele responded that its serial plate had been altered, and the Bank "had four titles to four trailers . . . and no cooperation out of Mr. Hatfield." On cross-examination, Steele admitted that the Bank did not hold title to the trailer; rather, the Bank had a UCC-1 financing statement granting it a security interest in Hatfield's equipment. In addition, Steele claimed that he did not notice the license tag affixed to the trailer when he inspected it within days after it was seized. Finally, when Timms called and demanded the return of her trailer, Steele merely referred her to the Bank's counsel. Accordingly, there exists some clear and convincing evidence from which the jury could find that the Bank acted with "that entire want of care which would raise the presumption of conscious indifference to consequences."[10] The award of punitive damages is affirmed.

---

[9] See *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 357 (1) (b) (551 SE2d 765) (2001).
[10] OCGA § 51-12-5.1 (b).

4. Lastly, the Bank challenges the award of attorney fees. A jury may award expenses of litigation under OCGA § 13-6-11 where "the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." An award of attorney fees under this Code section "should be affirmed if there is any evidence to support it unless it can be said as a matter of law that there was a reasonable defense."[11] The Bank claims that the award for expenses of litigation cannot be sustained because a bona fide controversy existed between the parties and there was no evidence of bad faith. "Where a bona fide controversy exists, attorney's fees may be awarded under OCGA § 13-6-11 only where the party sought to be charged has acted in bad faith in the underlying transaction."[12] Contrary to the Bank's contention, there is evidence that the Bank acted in bad faith when it failed to attempt to identify the trailer's owner prior to seizing it.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 24, 2003.

*Brian M. House*, for appellant.
*Christopher A. Townley, Thomas F. Lindsay*, for appellee.

---

[11] (Citations and punctuation omitted.) *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 224 (6) (312 SE2d 386) (1983).

[12] *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995), citing *Dimambro Northend Assoc.*, supra at 224-225 (6).