A08A1414, A08A1415. INSURANCE INDUSTRY CONSULTANTS, LLC et al. v. ALFORD; and vice versa.
(669 SE2d 724)

BARNES, Chief Judge.

Following trial in Case No. A08A1414, the jury returned a verdict in favor of Richard G. Alford in the amount of $310,274 against Insurance Industry Consultants, LLC and IIC, Incorporated (hereinafter "IIC"). A judgment was later entered for that amount. IIC appeals the judgment, contending numerous errors were committed. For the reasons set forth below, we affirm.

In Case No. A08A1415, Alford cross-appeals the trial court's grant of IIC's motions for directed verdict in his fraud and punitive damages claims, and also appeals the court's refusal to charge the jury on prejudgment interest. We affirm the trial court's rulings in Alford's cross-appeal.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict, new trial and j.n.o.v. will not be disturbed.

(Citation and punctuation omitted.) *Gantt v. Bennett*, 231 Ga. App. 238, 240 (1) (499 SE2d 75) (1998).

Viewed in the light most favorable to the jury's verdict, the record shows that Alford entered into a three-year employment agreement with IIC in 1997 as president and as a board director. Per

the contract, Alford received a base salary and yearly bonus. He also signed a shareholder agreement whereby he could purchase shares of company stock and in the event of his separation from IIC, the company would buy his stock. The employment contract also included a 180-day notice provision if IIC terminated Alford without cause.

At some point in November 2001, Alford was terminated from IIC, although the parties disagree as to the exact day. IIC offered Alford a new employment contract in November 2001, which Alford refused. It is undisputed, however, that Alford was not terminated for cause and that his last day at IIC was January 2, 2002. In November 2001, before he was fired, Alford formed the company Risk Consulting Services, Inc., although he did not work for the company until after he was terminated from IIC.

In January 2002, Alford filed a complaint for declaratory judgment and injunctive relief regarding the restrictive covenants in the employment agreement. Alford requested that the covenants be deemed void and unenforceable, and that IIC be enjoined from any legal action against him arising from the restrictive covenants. Alford later amended the complaint to seek damages for breach of contract for IIC's failure to abide by the notice provisions in the employment contract and failure to pay Alford's bonus payments. He also requested attorney fees under OCGA § 13-6-11 for IIC's bad faith, and demanded a jury trial.

At the close of evidence, the trial court granted Alford's motion for directed verdict on IIC's counterclaim for usurpation of corporate opportunities, denied IIC's motions for directed verdict regarding the notice provision, the bonus provision, the stock's book value under the shareholder agreement, and Alford's request for attorney fees. The jury returned a verdict in favor of Alford for $310,274. IIC timely filed a motion for judgment notwithstanding the verdict ("JNOV"), which the trial court denied.

### Case No. A08A1414

1. IIC first contends that the bonus agreement was indefinite and therefore unenforceable. It maintains that the agreement merely reflected an unenforceable "agreement to agree" because the bonus provision only states a bonus rate for 1997 with later bonuses to be determined at IIC's discretion.

The bonus provision provided for "[a] bonus of 10% of all new business generated by [Alford] and a second year payment of 5% of earned renewals of this business. These percentages apply through 12/31/97 and will be evaluated for appropriateness at that time and periodically thereafter."

To be enforceable, a promise of future compensation must be made at the beginning of the employment. *Sineath v. Lane Co.*, 160 Ga. App. 402, 405 (287 SE2d 341) (1981). However, the promise of future compensation must be for an exact amount or based upon a "formula or method for determining the exact amount of the bonus. [Cit.]" *Christensen v. Roberds of Atlanta, Inc.*, 189 Ga. App. 289, 291-292 (2) (375 SE2d 267) (1988) (promise to pay a bonus of $7,000 to $8,000 per year not enforceable).

Here, although IIC argues that Alford's bonus was not fixed or certain because of the clause stating that after 1997, the bonus percentage would be reevaluated, it is clear that the bonus as fixed was an exact amount or based upon a "formula or method for determining the exact amount of the bonus." See *Cary v. Neel*, 54 Ga. App. 860, 861 (189 SE 575) (1936) (five cents per ton of gravel sold not indefinite); *Phillips & Co. v. Hudson*, 9 Ga. App. 779, 780-781 (2) (72 SE 178) (1911) (promise to pay as a bonus a certain percentage of a company's net earnings was definite and enforceable). Compare *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995) (at the end of each year for which Cooper sought to recover bonuses, the president of the company and Cooper "agreed" as to the amount of the bonuses).

Alford had a right to receive the bonuses described in his contract based upon the percentages set forth. Although the contract also gave IIC the opportunity to revisit the percentages, the evidence shows that this was not done. Thus, the trial court did not err in denying IIC's motion for directed verdict on Alford's claim for bonuses.

2. IIC also maintains that Alford was not entitled to damages for its alleged breach of the notice provision, and also that the trial court erred in allowing Alford to present evidence that the notice provision was intended to be a severance provision. We do not agree.

The notice provision provided that

> [i]n the event that termination shall result from the decision of one of the parties hereto to withdraw herefrom, other than for cause, the party wishing to withdraw shall notify the other party, in writing, at least one hundred and eighty (180) days in advance of his or its wish to terminate this agreement.

Also, in the event of his termination, Alford was required to work for a transition period of "not less than thirty (30) days after the receipt or delivery . . . of notice of termination unless so waived by IIC."

The evidence reflected that Alford worked for 49 days of the 180-day severance period, and the jury awarded him damages for the

remaining 131 days. The trial court did not err in denying IIC's motion for directed verdict as to this issue.

3. IIC also claims that the trial court failed to adjust the judgment to reflect Alford's mitigation of damages. Specifically, it contends that Alford did not suffer any damages because he earned more money working for his new company, Risk, during the time specified in the notice provision than he would have with IIC.

Generally, "[w]here by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." OCGA § 13-6-5. However, that rule of law does not apply " 'where there is an absolute promise to pay.' " *Haley v. Oaks Apts.*, 173 Ga. App. 44, 46 (2) (325 SE2d 602) (1984). In this case,

> under the contract [Alford's] right to severance pay was absolute should [IIC] suspend him prior to six months after its notice of termination, and thus [Alford's] right to this pay remained unaffected by the amount of earnings he made or should have made after he was suspended[. Therefore,] we find no merit in [IIC's] . . . argument that [Alford's] damages should have been reduced under the "mitigation theory."

*Atlanta &c. Clinics v. Patton*, 176 Ga. App. 2, 3 (1) (335 SE2d 141) (1985).

4. We find no merit to IIC's argument that Alford failed to prove the book value of IIC's stock such that the trial court should have granted its motion for directed verdict or JNOV.

The shareholder agreement provided that should Alford be terminated, his stock would be valued "as of the end of the fiscal year of the Corporation immediately preceding the termination of employment." The evidence included a 2000 stock valuation, and while IIC's accountant reportedly did not have a 2001 calculation, the 2000 stock valuation was some evidence from which the jury could calculate the book value of the stock.

5. Likewise, IIC's contention that the trial court erred in granting Alford's motion for directed verdict on its usurpation of corporate opportunity claim is meritless.

The threshold question in this claim "is whether an opportunity presented to a corporate fiduciary is a 'corporate' opportunity. That factual determination is to be made from all the relevant facts and circumstances. The burden of proof with regard to the threshold question rests upon the party attacking the acquisition." (Citation and punctuation omitted.) *Phoenix Airline Svcs. v. Metro Airlines*, 260 Ga. 584, 587 (2) (397 SE2d 699) (1990).

Our Supreme Court has "adopted the 'interest or expectancy' test for purposes of identifying corporate business opportunities. A business opportunity arises from a 'beachhead' consisting of a legal or equitable interest or an 'expectancy' growing out of a preexisting right or relationship." (Punctuation omitted.) *Singer v. Habif, Arogeti & Wynne*, 250 Ga. 376, 378 (2) (297 SE2d 473) (1982). "[T]he opportunity of dealing with certain customers [does] not constitute a business opportunity." Id. Nor does an "ongoing relationship with no finite aspect." Id. at 379.

The testimony at trial demonstrated that the business relationships at issue were with prospective clients that IIC hoped to retain or acquire business with, or with whom it had to annually renew contacts. As such, no contractual arrangement between them existed, and they were not the exclusive customers of IIC. Under these facts the customers did not constitute business opportunities, and the trial court did not err in granting Alford's directed verdict as to this claim.

6. In enumerations 7 and 8, IIC maintains that the trial court erred in finding that Alford was entitled to attorney fees and costs under OCGA § 13-6-11, and maintains that Alford had presented inadequate evidence of the amount of his attorney fees and costs.

OCGA § 13-6-11 permits the jury to award attorney fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." If a bona fide controversy exists, the plaintiff may recover attorney fees under this Code section only if the defendant has acted in bad faith in the underlying transaction. *Latham v. Faulk*, 265 Ga. 107, 108 (2) (454 SE2d 136) (1995). Issues regarding the existence of a bona fide controversy or a defendant's bad faith are generally for the jury to decide. *Southern Co. v. Hamburg*, 220 Ga. App. 834, 841 (4) (470 SE2d 467) (1996); *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 542 (3) (466 SE2d 27) (1995). Finally, an award of attorney fees under OCGA § 13-6-11 should be affirmed if there is any evidence to support it. *Toncee*, supra.

Here, there was evidence from which the jury could conclude that IIC was stubbornly litigious in refusing to pay Alford the monies to which he was legally entitled under the contract. *Gateway Bank & Trust v. Timms*, 259 Ga. App. 299, 302 (4) (577 SE2d 15) (2003). This is some evidence to support a finding of bad faith sufficient to recover attorney fees.

7. IIC complains that the trial court erred in admitting a statement purportedly made by a federal judge. We do not agree.

One of IIC's principals was asked during cross-examination if "taking money out of IIC saying they were for technical services and giving them to a company that didn't provide any services was a

sham." And the principal was then asked if "the federal judge [had] called [the transactions a sham] in open court." IIC objected on the basis of hearsay, but the trial court overruled the objection, finding that the federal judge's characterization was not offered to prove that the transactions were a sham, only that someone else characterized them as such.

"Admission of evidence is committed to the sound discretion of the trial court, whose determination shall not be disturbed on appeal unless it amounts to an abuse of discretion." (Citation and punctuation omitted.) *Chambers v. Gwinnett Community Hosp.*, 253 Ga. App. 25, 26 (1) (557 SE2d 412) (2001). We find no abuse here. "If the out of court declaration is admitted to prove the fact that the declaration was made and not to prove the truth of the declaration, it would not be hearsay." *Gordon v. State*, 273 Ga. 373, 376 (2) (b) (541 SE2d 376) (2001) quoting Rumsey, Agnor's Ga. Evid. (3rd ed.), § 1.1. Moreover, even if error, any such error was harmless. OCGA § 9-11-61.

8. IIC contends that the trial court erred in charging the jury that it should construe the contract, arguing that contract construction is a legal issue for the court. While it is not the province of the jury to construe unambiguous contracts, where, as here, there is evidence tending to show that the meaning of a contract was differently understood in one way or another by the parties to the contract, it is not improper to submit to the jury any question as to the construction of the contract. The " 'issue of what the ambiguous language means and what the parties intended must be resolved by a jury. (Cit.)' [Cit.]" *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 817 (1) (584 SE2d 41) (2003). We find no error.

9. Finally, there was no error in the trial court's refusal to give IIC's requested charge that "a person who signs a document is presumed to know the document's contents and to understand the document." "In order for a refusal to charge to be error, the requests must be entirely correct and accurate, and adjusted to the pleadings, law, and evidence, and not otherwise covered in the general charge." (Citation and punctuation omitted.) *Brown v. Mann*, 237 Ga. App. 247, 250 (2) (b) (514 SE2d 922) (1999). The trial court found that the evidence did not warrant the charge, as there was no evidence that Alford did not understand the documents he signed.

*Case No. A08A1415*

10. Alford contends that the trial court erred in granting IIC's motion for directed verdict regarding his claim for fraud and related claim for punitive damages. He maintains that there was evidence from which the jury could conclude that IAC fraudulently represented that it would pay certain monies to him but refused to do so.

> The general rule is that actionable fraud cannot be predicated upon promises to perform some act in the future. Nor does actionable fraud result from a mere failure to perform promises made. Otherwise, any breach of a contract would amount to fraud. An exception to the general rule exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place.

(Citation and punctuation omitted.) *Bradley v. British Fitting Group*, 221 Ga. App. 621, 624 (4) (472 SE2d 146) (1996).

There was no evidence that suggests that IIC fraudulently induced Alford to sign the employment agreement under the guise of paying certain monies, specifically the bonuses, without the intent to perform those promises.

Without establishing this cause of action in fraud, Alford was not entitled to punitive damages. *Stiefel v. Schick*, 260 Ga. 638, 639 (2) (398 SE2d 194) (1990).

11. Alford also contends that the jury should have been permitted to consider and award prejudgment interest on his severance pay and stock entitlements.

"A debt is liquidated when it is certain how much is due and when it is due." (Citations and punctuation omitted.) *Bush v. Northside Trucking*, 252 Ga. App. 729, 731 (1) (556 SE2d 909) (2001). When the amount due is uncertain and must be determined by a jury, it is not a liquidated claim. *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 51-52 (3) (305 SE2d 864) (1983). Prejudgment interest is allowable only when the amount recoverable is liquidated. *Bush*, supra, 252 Ga. App. at 731 (1). Liquidated means fixed and certain, a sum that cannot be changed by proof. See id. The damages Alford sought to obtain were not liquidated; therefore, prejudgment interest was not warranted.[1]

*Judgments affirmed. Johnson, P. J., and Phipps, J., concur.*

DECIDED NOVEMBER 20, 2008 — 

*Berman, Fink & Van Horn, Benjamin I. Fink, Aaron B. Chausmer*, for appellants.

---

[1] Evidence shows that per the stock agreement Alford was entitled to 8 percent interest on the stocks, and the trial court permitted the jury to consider that interest in its calculation of damages.

*Ford & Harrison, Patricia G. Griffith, Reneé A. Canody*, for appellee.