**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 23, 2016**

# In the Court of Appeals of Georgia

A15A2003. BO PHILLIPS COMPANY, INC. et al. v. R. L. KING
    PROPERTIES, LLC et al.

ELLINGTON, Presiding Judge.

Appellants Bo Phillips Company, Inc. ("BPC") and Ro Benn, d/b/a Big Benn

Entertainment ("Benn") sued R. L. King Properties, LLC and Robert L. King

(collectively, the "appellees") for conversion, among other claims. BPC and Benn

contend that they rented and delivered equipment to a DeKalb County nightclub, the

premises of which was owned by King Properties, and the appellees later denied BPC

and Benn access to the premises and refused to return their equipment.[1] The trial

---

[1] BPC and Benn also asserted claims for implied contract, unjust enrichment, constructive trust, punitive damages, and attorney fees. Appellees moved for summary judgment on all claims. BPC and Benn filed a cross-motion for summary judgment on the issue of liability as to their conversion claim. BPC and Benn also filed a motion to compel appellees to produce for inspection the pedestrian barricades, allegedly owned by BPC, and the sound and lighting equipment, allegedly

court granted summary judgment in favor of the appellees on all claims and denied BPC's and Benn's motion to compel discovery as moot. The trial court also impliedly denied BPC's and Benn's cross-motion for summary judgment.[2] BPC and Benn appeal from the trial court's grant of summary judgment on their claims for conversion, punitive damages, attorney fees, and the remedy of a constructive trust. They also appeal from the trial court's denial of their motion to compel and the trial court's denial of their cross-motion for summary judgment. For the reasons set forth below, we affirm in part and reverse in part.

Under OCGA § 9-11-56 (c),

[s]ummary judgment is warranted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. We review the grant or denial of a motion for summary judgment de novo, and we view the evidence, and the reasonable inferences drawn therefrom, in a light most favorable to the nonmovant.

---

owned by Benn, which, they contended, remained on the premises.

[2] The trial court did not expressly deny BPC's and Benn's cross-motion, but that motion's denial was implicit in the trial court's grant of summary judgment to appellees on all claims. See *Georgian Art Lighting Designs, Inc. v. Gwinnett County Bd. of Tax Assessors*, 211 Ga. App. 510 n.1 (439 SE2d 687) (1993),

(Punctuation and footnotes omitted.) *Assaf v. Cincinnati Ins. Co.*, 327 Ga. App. 475, 475-476 (759 SE2d 557) (2014).

The evidence shows that BPC is in the business of renting, selling, and servicing traffic and pedestrian control devices, among other safety-related gear. BPC purchased 150 eight-foot crowd control barricades on February 2, 2012, from an identified vendor. John Craig, Jr., BPC's vice president, testified by affidavit that on or about March 8, 2012, BPC rented and delivered 20 of those barricades to a nightclub known as Club Libra, which was operating on property located at 2549 Gresham Road in DeKalb County (the "premises"). BPC rented and delivered another 10 barricades to Club Libra on March 30, 2012. Attached to the affidavit, among other documentation, were delivery tickets showing a rental of barricades at a daily rate. BPC later attempted to regain possession of the barricades in October 2012, but the premises were closed and padlocked.

Benn, through his business Big Ben Productions ("Big Ben"), owns, rents, and services sound, stage, and lighting equipment. Benn testified that on October 17, 2011, Big Ben rented and delivered 42 pieces of equipment to Club Libra, as described in an attached agreement with "Kareem Hawthorn 'Club Libra' BKE Ent."

3

According to Benn, he was unable to regain possession of the equipment in July 2012 as the premises were closed and padlocked.

Kareem Hawthorn testified by affidavit that he is a member of Blacknights Entertainment, LLC, which operated Club Libra on the Premises. Hawthorne's testimony showed the following. On or about October 17, 2011, Benn leased to Blacknights sound, stage, and lighting equipment for use at Club Libra. In addition, on March 8, 2012, BPC leased to Blacknights 20 eight-foot crowd control barricades for use at Club Libra. BPC leased to Blacknights, also for use at Club Libra, an additional 10 barricades on March 30, 2012. King permanently locked Blacknights out of Club Libra on August 29, 2012, at which time the pedestrian barricades that BPC had leased to Blacknights, and the equipment that Benn had leased to Blacknights, remained on the premises.

On August 22, 2012, King Properties sued Blacknights, as lessee, and Hawthorne and Tarrik Mabon, as lease guarantors, to recover for rent, taxes, and insurance allegedly owing under a lease agreement with respect to the premises. In an answer verified by Hawthorn and Mabon, the defendants asserted that the personal property on the premises was both leased and owned. In discovery responses filed in 2013, Blacknights, Hawthorn, and Mabon identified the items remaining on the

4

Property as including "30 barricades (Leased Equipment)," six "DJ Speakers . . . (Leased Equipment)" and "Sound and Lighting Equipment (Leased Equipment)." In their discovery responses, Hawthorn and Mabon also identified "Bo Phillips" and "Rogelio Benn" as two of the individuals with whom they or Blacknights "conducted business and/or leased equipment from August 1, 2011 until August 25, 2012."

1. BPC and Benn contend that the trial court erred in granting summary judgment to appellees on their claim for trover and conversion of their personal property.[3] Conversion constitutes "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." (Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987). To establish a prima facie case for conversion, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." (Citation and punctuation omitted.) *Trey Inman & Assocs., P.C. v. Bank*

---

[3] "The gist of [a trover] action is conversion." *Powers v. Wren*, 198 Ga. 316, 319 (1) (31 SE2d 713) (1944).

5

*of America, N.A.*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010). See *Hooks v. Cobb Center &c., Inc*, 241 Ga. App. 305, 308 (5) (527 SE2d 566) (1999) (accord).

The parties agree that Blacknights was in possession of personal property when King Properties locked it out of the Premises. And "[i]t is presumed that title follows the possession of the property." (Citation omitted.) *Hinchcliffe v. Pinson*, 87 Ga. App. 526, 529 (74 SE2d 497) (1953). The presumption that one in possession of personal property is the owner of that property is, however, a rebuttable presumption. See *Hattaway v. Keefe*, 191 Ga. App. 315, 317 (1) (381 SE2d 569) (1989). As set forth above, BPC and Benn came forward with evidence, including statements by Blacknights and its members, from which a trier of fact could conclude that BPC owned the pedestrian barricades and Benn owned the sound and lighting equipment which was in the possession of Blacknights when Blacknights was locked out of the premises. The appellees claim that the evidence was insufficient because of a lack of serial numbers or other particular identifying information as to the claimed property. As to BPC, appellees argue that the delivery ticket for the pedestrian barricades shows 50, not 30, were delivered; there was a lack of evidence of ongoing rental payments for the barricades; the person who ordered the barricades, Rowan Reid, was not shown to be associated with Club Libra or Blacknights; and Craig's affidavit and

6

Hawthorne's discovery responses are inconsistent as to the date of the lease. With respect to Benn, the appellees argue that equipment listed in the lease agreement for the DJ sound and lighting equipment was inconsistent with the demand letter for the return of equipment sent by Benn's counsel and with the list of leased equipment produced in discovery by Blacknights; the complaint alleged Benn delivered 42 pieces of "sound and lighting" equipment but Hawthorne's affidavit refers to 42 pieces of "sound, *stage*, and lighting equipment" (emphasis supplied); and Benn failed to come forward with any evidence showing periodic payments consistent with a lease. However, while the appellees point to inconsistencies and conflicts in the evidence, they were for the jury to resolve. See *Gateway Bank & Trust v. Timms*, 259 Ga. App. 299, 300 (1) (577 SE2d 15) (2003) (in trial for conversion of a trailer, conflicting evidence as to true ownership of the trailer, notwithstanding the lack of serial number or other identifying information as to the trailer upon manufacture, was sufficient to support the jury's verdict).

The appellees also rely on evidence that King Properties retained a landlord's lien against Blacknights' property. They do not, however, rely on a statutory

7

landlord's lien.[4] Rather, King Properties shows that, under its lease agreement[5] with Blacknights, it was entitled to retain possession of Blacknights' personal property "until all charges of any kind" were paid.[6] See *Colonial Self Storage, Inc. v. Concord Properties, Inc.*, 147 Ga. App. 493, 494 (1) (249 SE2d 310) (1978) (rental contract allowed landlord to seize tenant's personal property upon non-payment of rent). However, the appellees do not show that King Properties was authorized under its agreement with Blacknights, or on any other basis, to retain personal property that Blacknights did not own pending satisfaction of Blacknights' obligation to King

---

[4] Compare OCGA § 44-14-341 ("Landlords shall . . . have a general lien on the property of the debtor which is subject to levy and sale, which general lien shall date from the time of the levy of a distress warrant to enforce the general lien.").

[5] Although the lease attached to King Properties' motion for summary judgment was not expressly authenticated, we agree with King Properties that the trial court was authorized to consider the agreement to be authenticated by the circumstantial evidence, which included the production of the lease during discovery and the appearance and contents of the document. See *Nyankojo v. North Star Capital Acquisition*, 298 Ga. App. 6, 8 (679 SE2d 57) (2009) (documents which contained very specific information and signatures on behalf of buyer and seller was sufficient circumstantial evidence of authentication); *Salinas v. Skelton*, 249 Ga. App. 217, 220-221 (1) (547 SE2d 289) (2001) (party's production of document during discovery is circumstantial evidence of authentication).

[6] The lease provided that "[u]pon termination of this lease . . . , or upon default by Lessee . . . , Lessor may enter the leased premises and remove any and all personal property of Lessee and may retain possession of such personal property until all charges of any kind, including rent, storage, or damages, shall be paid in full."

Properties. They do suggest that, if BPC and Benn are the true owners of the personal property at issue, then King Properties was entitled to retain such property pending payment of storage fees, which the appellees' counsel characterized as an "offset" at summary judgment hearing. But pretermitting whether King Properties could assess a storage fee,[7] they have not offered BPC and Benn the opportunity to take the property at issue upon payment of such a fee, and they do not show thereby an absence of triable issues of material fact as to BPC's and Benn's title and right to possession that would authorize the grant of summary judgment to the appellees on the conversion claim.[8]

In addition to evidence as to their title, BPC and Benn came forward with evidence that King Properties was in possession of their personal property, had received their demands for the return of their property, and had refused those

---

[7] The appellees rely on *Domestic Sewing Machine Co. v. Watters*, 50 Ga. 573, 575 (1874), which found that the "true limit" of the lien of a livery man or inn keeper is that it "is only good against the true owner or prior incumbrancer for the expense of feeding or taking care of that particular article."

[8] The appellees also argue that BPC and Benn failed to preserve their argument on appeal that, under the Uniform Commercial Code – Leases, OCGA § 11-2A-101 et seq., the creditor of the lessee of goods takes subject to that lease. We agree with appellees that BPC and Benn failed to raise the argument below, and we do not address it here.

demands. The record shows that in 2013, counsel for BPC and Benn sent letters to King Properties' counsel demanding the return of BPC's pedestrian barricades and Benn's sound and lighting equipment. King, the sole owner of King Properties, later acknowledged in his deposition that he received the demand letters. King also acknowledged that King Properties owns the premises, which it rented to Blacknights, but that he locked Blacknights out of the premises when it failed to pay rent. King testified that, as of the time of his deposition in 2014, there had been no tenants in the premises after Blacknights. King acknowledged that there remained sound and lighting equipment, as well as pedestrian barricades, on the premises. According to King, none of the sound and lighting equipment, nor any of the pedestrian barricades, had been taken off the premises. King intended to hold onto all of the personal property on the premises until he received payment from Blacknights, and, in the event Blacknights failed to pay, he intended to dispose of it in a sheriff's sale.

In light of the foregoing, as to defendant King Properties, we conclude that BPC and Benn came forward with evidence to show a triable issue of fact as to each element of their claim for conversion. As for defendant King, the evidence shows that King was the sole member of King Properties, a limited liability company. "A LLC

member may be held individually liable if he or she personally participates or cooperates in a tort committed by the LLC or directs it to be done." (Citations omitted.) *Milk v. Total Pay & HR Solutions, Inc.*, 280 Ga. App. 449, 454 (634 SE2d 208) (2006). If King Properties committed the tort of conversion of BPC's and Benn's property, a jury could find that King participated in and directed that conversion and was therefore personally liable. See *BTL COM v. Vachon*, 278 Ga. App. 256, 260 (1) (628 SE2d 690) (2006) (Summary judgment in favor of individual defendants was improper as there remained issues of fact as to whether they participated in false representations that induced plaintiff to enter into agreement with the defendants' company.); *Jennings v. Smith*, 226 Ga. App. 765, 766-767 (1) (484 SE2d 362) (1997) (If a jury found the corporation negligent in constructing or repairing the house, it could also find appellee, a corporate officer, personally liable for such negligence because he specifically directed or participated in the construction and repairs.). It follows that the trial court erred in granting the appellees' motion for summary judgment as to BPC's and Benn's conversion claim.

2. BPC and Benn further contend that the trial court erred in granting the appellees' motion for summary judgment as to their claim for imposition of a constructive trust. We agree. In their complaint, BPC and Benn asked that a

11

constructive trust be placed on their property as it was being held by the appellees contrary to their lawful rights. "A constructive trust arises not from the intent of the parties, but by equity with respect to property acquired by fraud, or although acquired without fraud where it is against equity that the property should be retained by the one who holds it." *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172 (1) (244 SE2d 46) (1978). See OCGA §53-12-132 (a) (A constructive trust is "implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."). Because material issues of fact remained as to whether appellees, inconsistently with BPC's and Benn's rights and contrary to equity, exercised dominion over their property, summary judgment was not proper as to the claim for imposition of a constructive trust. See *Gibbs v. Dodson*, 229 Ga. App. 64, 69 (2) (492 SE2d 923) (1997) (trial court did not err in denying summary judgment on appellee's counterclaim for a constructive trust on an insurance policy, which claim would have become viable upon appellant's assertion of paramount right to the policy, "thereby engaging in an act of dominion hostile to [appellee's] ownership rights and contrary to equity").

12

3. BPC and Benn also contend that the trial court erred in granting the appellees' motion for summary judgment on their claim for punitive damages. We agree. Punitive damages may be awarded in an action for conversion, which is an intentional tort, "provided one or more of the criteria in OCGA § 51-12-5.1 (b) are met." *Gateway Bank & Trust v. Timms*, 259 Ga. App. at 301 (3). See *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 357 (1) (b) (551 SE2d 765) (2001) (finding that actions for trover or for conversion are intentional torts). Punitive damages are available "only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b). Viewing the evidence in a light most favorable to BPC and Benn, a trier of fact could find that appellees became aware in pursuit of their claims against Blacknights that King Properties was in possession of property that did not belong to Blacknights and which King Properties was not entitled to retain under its agreement with Blacknights. A trier of fact could also conclude that the appellees were thereafter unwilling to return that property to BPC and Benn, its true owners, upon their demand, thereby showing "that entire want of care which would raise the presumption

13

of conscious indifference to consequences." Id. See *Gateway Bank & Trust v. Timms*, 259 Ga. App. at 301 (3) (where in trover action bank did not hold title to seized trailer, but held a UCC financing statement against property of the true owner's son, and made no effort to identify the son as the owner of the trailer within a year of its seizure, and, further, the bank's loan officer responded to the owner's request for the return of her trailer by merely referring her to the bank's counsel, there existed some clear and convincing evidence authorizing the jury's award of punitive damages).

4. BPC and Benn further maintain that the trial court erred in granting summary judgment to the appellees on BPC's and Benn's claim for attorney fees on account of the appellees' bad faith. See OCGA § 13-6-11.[9] "Bad faith warranting an award of attorney fees must arise out of the transaction on which the cause of action is predicated, and it may be found in how the defendant acted in his dealing with the plaintiff." (Footnote omitted.) *Foxchase v. Cliatt*, 254 Ga. App. 239, 240 (2) (562 SE2d 221) (2002). As we noted in Division 3, supra, conversion is considered an

---

[9] "The expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." OCGA § 13-6-11. The statute "applies to both contract and tort cases." *Lowery v. Roper*, 293 Ga. App. 243, 244 n. 2 (666 SE2d 710) (2008).

14

intentional tort. And "[e]very intentional tort invokes a species of bad faith and entitles a person so wronged to recover the expenses of litigation including attorney fees." (Citation and punctuation omitted.) *Bunch v. Byington*, 292 Ga. App. 497, 506 (5) (664 SE2d 842) (2008). See *Ponce de Leon Condominiums v. Di Girolamo*, 238 Ga. 188, 190 (2) (232 SE2d 62) (1977) (accord). The same evidence which, if viewed in a light most favorable to BPC and Benn, would authorize an award of punitive damages would also authorize an award of attorney fees. See id. (same testimony that authorized jury's award of punitive damages also provided authorization for jury to find that appellants acted in bad faith). Therefore, the trial court also erred in granting summary judgment to the appellees on BPC's and Benn's claim for attorney fees.

5. BPC and Benn also maintain that the trial court erred in denying their motion to compel discovery as moot. The record shows that BPC and Benn moved to compel the appellees to allow them access to the premises for purposes of inspecting their personal property. The trial court found the motion to compel to be moot because the appellees were entitled to summary judgment on all of BPC's and Benn's claims. As we found supra, however, the trial court erred in granting summary judgment on BPC's and Benn's claim for conversion, among other claims.

15

Although the motion to compel was filed after the conclusion of the six-month discovery period, it was not necessarily too late to be considered, as appellees contend. See *Fisher v. Bd. of Commrs. of Douglas County*, 200 Ga. App. 353, 354 (1) (408 SE2d 120) (1991) ("So long as discovery is promptly and diligently pursued by the moving party within the discovery period . . . , a motion to compel or for sanctions may be brought after the expiration of the discovery period."). Nor do we find, as the appellees argue, that BPC and Benn waived this claim of error by failing to ask the trial court continue or set aside its ruling on the summary judgment motion pending resolution of the motion to compel. See *Mallard v. Forest Heights Water Works*, 260 Ga. App. 750, 752 (2) (580 SE2d 602) (2003) (holding that appellant waived argument that the trial court erred by considering appellee's summary judgment motion without first ruling on appellant's motion to compel discovery because appellant never moved to continue the summary judgment ruling or otherwise object at the trial level). The authority relied upon by appellees is distinguishable because BPC and Benn do not contend that the trial court erred in ruling on their motion for summary judgment before ruling on the motion to compel. Rather, because genuine issues of fact remain for the jury on BPC's and Benn's claim for conversion, the motion to compel was not moot and "may again be presented to the trial court for

16

ruling." *Daniel v. Earle*, 174 Ga. App. 649, 650 (2) (331 SE2d 19) (1985) (as the trial court determined the motion to compel to be moot in view of its grant of summary judgment to the appellee, but this court found that genuine issues of material fact remained for the jury, appellant was entitled to pursue a ruling on his motion to compel).

6. Lastly, we consider BPC's and Benn's argument that the trial court erred in denying their cross-motion for summary judgment on the issue of the appellees' liability on their conversion claim. Viewing the evidence in a light most favorable to the appellees for purposes of this claim of error, the appellees have pointed to evidence, including the lack of ongoing lease or rental payments, from which a trier of fact might find that neither BPC nor Benn overcame the presumption that property in possession of Blacknights was owned by Blacknights, and that the property was therefore lawfully in the possession of King Properties under its agreement with Blacknights. It follows that the trial court did not err in denying BPC's and Benn's cross-motion for summary judgment.

In summary, the trial court erred in granting summary judgment to the appellees on BPC's and Benn's claims for conversion, imposition of a constructive trust, punitive damages, and attorney fees. BPC's and Benn's motion to compel was

not moot and may again be presented to the trial court for consideration. The trial court's denial of BPC's and Benn's cross-motion for summary judgment is affirmed.

*Judgment affirmed in part and reversed in part. McFadden, J., concurs. Dillard, J., concurs in judgment only*.

A15A2003. BO PHILLIPS COMPANY, INC. et al. v. R. L. KING

PROPERTIES, LLC et al.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As a result, the majority's opinion decides only the issues presented in the case sub judice and may not be cited as binding precedent. See Court of Appeals Rule 33 (a).